IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.  ) | 02: 07cr12 |
| ) | |
| MARK COOK ) | |

**MEMORANDUM OPINION AND ORDER OF COURT**

Defendant, Mark Cook, and his co-defendant, Jess Babinsack, were indicted by a Grand Jury on January 10, 2007, and charged with one count of conspiracy to pass counterfeit checks at various retail establishments from November 2006 to December 2006, in violation of Title 18, United States Code § 371.

On May 14, 2007, Babinsack pleaded guilty.  On September 17 and 18, 2007, the Court held a non-jury trial on the pending charges against Defendant Cook.  In defense counsel's closing argument, he acknowledged that the evidence against Babinsack was overwhelming and framed the issue as whether it is reasonable and logical to infer knowledge, agreement and participation in the conspiracy by Cook.

The government presented numerous witnesses:  Mary Louise Bopp, Richard Romano, Colleen Doheny, Judy Molinero, David Anderchak, James Ali, William J. Ross, Robert J. Schmidt, James Rozboril, Tim Downing, Daniel Carey White, Jeffrey Heyl, Brian Witherow, Christopher Jacobson, Patricia Babinsack and Jennifer Frain.  The government also introduced numerous exhibits, including counterfeit checks and matching receipts from various retailers, and footage from video cameras at those stores.  The government also introduced merchandise which was recovered during searches of Cook's truck, Cook's home and Babinsack's home.  Defendant Cook did not present any evidence.

At the non-jury trial, both parties were represented by counsel who presented and argued the issues skillfully and effectively. The parties did not accept the Court's invitation to file post-trial briefs. The Court therefore enters its decision pursuant to Federal Rule of Criminal Procedure 23(c). For the reasons that follow, the Court finds that defendant Mark Cook is guilty as charged in the Indictment of the crime of conspiracy, in violation of Title 18, United States Code § 371.

**FINDINGS OF FACT**

The evidence presented at trial establishes the following:

A.   <u>Stipulations</u>

Prior to the start of trial, counsel agreed to the following stipulations:

1. The four financial institutions, Apollo Trust Co., Dollar Bank, National City Bank and PNC Bank, were all involved in interstate commerce.

2. Babinsack's computer was used to make false identification documents.

3. All of the government's exhibits and supplemental exhibits were admitted by stipulation without objection.

B.   <u>The Scheme</u>

Agents recovered multiple fake Pennsylvania drivers licenses, in various names, each bearing Jess Babinsack's photograph. Agents recovered Sam's Club membership cards matching names on the fake drivers licenses. Agents also recovered a list that appeared to contain all of the relevant information from various checks, including routing and account

numbers. Babinsack had computer equipment, software and check stock that enabled him to prepare counterfeit checks at his home. Babinsack would retain the legitimate routing numbers, but change the account owner information to correspond with one of his fake drivers licenses. Babinsack then, on numerous occasions, went to local retailers, purchased items, and "paid" by presenting a fake check and fake drivers license. In this manner, Babinsack obtained over $30,000 in merchandise in less than a one month period.

C.     <u>Cook's Knowledge, Agreement and Participation</u>

The Court finds beyond a reasonable doubt that Cook knew about, agreed to join, and participated in the conspiracy. Cook's involvement was not tangential or episodic. On several occasions, surveillance cameras captured Cook and Babinsack entering the store and viewing merchandise together. In each instance, Cook would exit the store and wait in his pickup truck while Babinsack presented the fake check to the cashier. It is a clear inference from this pattern of behavior that Cook knew what Babinsack was doing, knew that it was illegal, and Cook was seeking to, literally, distance himself from the criminal activity. Moreover, Cook continued to drive Babinsack to additional stores to enable him to present more fake checks and fraudulently obtain more goods. The spreadsheet prepared by Certegy (Exh. CT-6) shows that Cook and Babinsack made five such efforts within a two-hour period on December 12, 2006. Two of the attempts were unsuccessful and the torn checks were recovered from Cook's truck, yet their efforts continued.

Moreover, there is clear evidence of "unity of purpose." A significant percentage of the merchandise wrongfully obtained by Babinsack ended up in the possession of Cook and was

recovered during the search of Cook's home. Among these items were a SONY DVD/VCR player, a LoveSac, a box of paintballs, a trash can, a Motorola RAZR phone, a gun safe, several items from CompUSA as detailed on the receipt (Exh. SWR-32), and candy and an AC/DC converter from Kmart as detailed on the receipt (Exh. SWR-35). On the Sportsman's Warehouse surveillance camera, the box of paintballs recovered from Cook's home (Exh. SWR-2) is clearly visible in Babinsack's shopping cart, with Cook pacing nearby.

Incident to the arrest, agents recovered a manila folder from which blank fake checks were protuding. this item was in plain view on top of the center console between the front seats in Cook's truck. Also obtained were notes of account information, fake licenses and membership cards, wrongfully obtained gift cards and various receipts. Most tellingly, inside the folder was a handwritten document: "Christmas List ... Mason." (Exh. SIA-7). Cook has a son named Mason. On the reverse side of the document was a list of items: Movies: Inuyasha season 3, Inuyasha Movie 4 - Fire on the Mystic Island; PS2 Games: Scarface, X-Box mem card, Halo, Halo 2, Halflife 2, Call of Duty 3; Sword; X-Box 360 with wireless remotes and a harddrive; Game: The Elder Scrolls IV: Oblivion, Burnout 4. Many of these items, including a full-sized sword (Exh. SWR-36), were recovered during the search of Cook's home. (*See* Exh. SWR-4, SWR-13, SWR-16, SWR-18 through SWR-21). It is inescapable that Cook was participating in the scheme with Babinsack, at least in part, to obtain Christmas presents for his son.

The incident at the LoveSac store at Ross Park mall is illustrative. Brian Witherow, the manager of that store, testified credibly that he recalled two people matching Babinsack and Cook's appearance being present at the checkout. Exhibit SWH-19 is a receipt for two

Supersacs, one with a microseude earth cover and one with a microseude navy cover. The Supersacs were paid for by a fake check in the name of Shawn Crytzer. (Exh. AT-11). After the purchase, the products were loaded into an older pickup truck at the rear loading dock. Cook owns such a truck, a Ford F-150 pickup that is visible in several surveillance photographs. A navy Supersac was recovered by agents during the search of Babinsack's home and a Supersac with a microseude earth cover was found in the search of Cook's home. Thus, on this occasion, Cook was present for the entire fraudulent conduct and obtained the fruits of the crime.

Further support for the conclusion that Cook knew about Babinsack's activities and willingly participated in them is found from the nature of their relationship. Cook and Babinsack were described as "best friends" and "inseparable." Cook talked to Babinsack frequently by phone, even hourly, and was often inside Babinsack's home. Cook, as Babinsack's landlord, knew that Babinsack was unemployed (except for jobs performed under the table for Cook) and in a poor financial condition. It is inconceivable that Cook could have thought that Babinsack obtained $30,000 in consumer goods legitimately. The photographs taken during the search of Babinsack's home show that the fruits of the crime spree were openly displayed, including big screen televisions and entertainment systems, computers, electronics, many still in boxes. Also plainly visible and openly displayed were the tools needed to prepare the false checks. As Jennifer Frain, who briefly lived in Babinsack's home, testified, Babinsack was open about his activities and made no effort to hide what he was doing.

**CONCLUSIONS OF LAW**

1. Cook made a knowing and voluntary waiver of his right to a jury trial under oath and in writing.

2. The Statute

    The general federal conspiracy statute, 18 U.S.C. § 371, provides: "If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both."

3. Elements of the Offense of Conspiracy

    In order to establish that Mark Cook is guilty of conspiracy, in violation of 18 U.S.C. § 371, the government must prove beyond a reasonable doubt each of the following elements: (1) that two or more persons agreed to commit an offense against the United States, as charged in the indictment, namely the underlying violations of 18 U.S.C. §§ 513(a) (making, uttering and possessing counterfeit securities of an organization involved in interstate commerce) and 1029(a)(2) (use of unauthorized access devices); (2) that Mark Cook was a party to or member of that agreement; (3) that Mark Cook joined the agreement or conspiracy knowing of its objective to commit an offense against the United States and intending to join together with at least one other alleged conspirator to achieve that objective; that is, that Mark Cook and at least one other alleged conspirator shared a unity of purpose and the intent to achieve a common goal or objective, to commit an offense against the United States; and (4) that at some time during

the existence of the agreement or conspiracy, at least one of its members performed an overt act in order to further the objectives of the agreement.  Third Circuit Model Criminal Jury Instructions.

4.		Elements of the Underlying Crimes

Title 18 U.S.C. § 513(a) provides: "Whoever makes, utters or possesses a counterfeited security of a State or political subdivision thereof or of an organization, or whoever makes, utters or possesses a forged security of a State or political subdivision thereof or of an organization, with intent to deceive another person, organization, or government shall be fined under this title or imprisoned for not more than 10 years, or both."  The elements needed to establish a violation of 18 U.S.C. § 513(a) are: (1) the defendant makes, utters or possesses a counterfeited security; (2) of an organization; (3) with intent to deceive another person or organization.  *United States v. Rodriguez*, 2007 WL 1287710 (W.D. Mich. 2007).

The crime of Use of Unauthorized Access Devices, in violation of 18 U.S.C. § 1029(a)(2), has four elements: 1) the intent to defraud; 2) the knowing use of or trafficking in an unauthorized access device; 3) to obtain things of value in the aggregate of $1,000 or more within a one-year period; and 4) an affect on interstate or foreign commerce." *United States v. Tunning*, 69 F.3d 107, 112 (6th Cir.1995).

It is clear, and essentially undisputed, that the elements of these underlying offenses were met, at least as to Babinsack.  As defense counsel noted in his closing argument, there is "no question" that Babinsack's overt acts constituted violations of these offenses, and these overt acts would be attributed to Cook if he is found to be a member of the conspiracy.  Thus, the Court will not elaborate further, but will turn to the argument actually made by Cook,

namely, that the government did not prove knowledge, agreement and participation in a conspiracy by Cook beyond a reasonable doubt.

5.      Existence of an "Agreement"

The government does not have to prove the existence of a formal or written agreement, or an express oral agreement spelling out the details of the understanding. The government also does not have to prove that all the members of the conspiracy discussed between themselves their unlawful objectives, or agreed to all the details, or agreed to what the means were by which the objectives would be accomplished. What the government must prove beyond a reasonable doubt is that two or more persons in some way or manner arrived at some type of agreement, mutual understanding, or meeting of the minds to try to accomplish a common and unlawful objective. The Court may consider both direct evidence and circumstantial evidence in deciding whether the government has proved beyond a reasonable doubt that an agreement or mutual understanding existed. It may find the existence of a conspiracy based on evidence of related facts and circumstances which prove that the activities of the participants in a criminal venture could not have been carried out except as the result of a preconceived agreement, scheme, or understanding. Third Circuit Model Criminal Jury Instructions.

The Court finds and rules that there is overwhelming circumstantial evidence, described above, that Cook and Babinsack reached an agreement to commit the crimes charged in the Indictment.

6.	Whether Cook "Joined" the Conspiracy

In order to find Mark Cook guilty of conspiracy, the Court must also find that the government proved beyond a reasonable doubt that he knowingly and intentionally joined that agreement or conspiracy during its existence. The government must prove that Cook knew the goals or objectives of the agreement or conspiracy and voluntarily joined it during its existence, intending to achieve the common goals or objectives and to work together with Babinsack toward those goals or objectives. The government need not prove that Cook knew everything about the conspiracy or that he was a member from the beginning. The government also does not have to prove that Cook played a major or substantial role in the conspiracy. The Court may consider both direct evidence and circumstantial evidence in deciding whether Cook joined the conspiracy, knew of its criminal objectives, and intended to further the objectives. Evidence which shows that Cook only knew about the conspiracy, or only kept "bad company" by associating with Babinsack, or was only present when it was discussed or when a crime was committed, is not sufficient to prove that Cook was a member of the conspiracy even if Cook approved of what was happening or did not object to it. Likewise, evidence showing that Cook may have done something that happened to help a conspiracy does not necessarily prove that he joined the conspiracy. Third Circuit Model Criminal Jury Instructions.

The Court finds and rules that there is overwhelming circumstantial evidence that Cook joined the conspiracy. His role went far beyond keeping bad company and passively observing and approving of Babinsack's conduct. Cook met with and drove Babinsack to victim retailers on numerous occasions, transported the ill-gotten goods in his truck, and obtained many fruits of the ongoing criminal activity.

7.        Mental State

In order to find Cook guilty of conspiracy, the Court must find that the government proved beyond a reasonable doubt that he joined the conspiracy knowing of its objectives and intending to help further or achieve those objectives. That is, the government must prove (1) that Cook knew of the objectives or goals of the conspiracy, (2) that Cook joined the conspiracy intending to help further or achieve those goals or objectives, and (3) that Cook and Babinsack shared a unity of purpose toward those objectives or goals. The Court may consider both direct evidence and circumstantial evidence. For example, evidence that Cook derived some benefit from the conspiracy or had some stake in the achievement of the conspiracy's objectives might tend to show that he had the required intent or purpose that the conspiracy's objectives be achieved. Third Circuit Model Criminal Jury Instructions.

The Court finds and rules that Cook had the requisite mental state. Do to his close relationship with Babinsack, it is inconceivable that Cook was unaware of the fraudulent scheme. In spite of his knowledge, he undertook repeated actions to further the goals and objectives of the conspiracy by transporting Babinsack to and from victim stores. As explained above, Cook derived numerous benefits from the conspiracy in the form of ill-gotten goods. The unity of purpose is perhaps illustrated most clearly by the Christmas list for Mason – Cook joined the conspiracy to do his Christmas shopping.

### CONCLUSION

Given the totality of the circumstances in this case, the Court finds and rules that the government has proven beyond a reasonable doubt that Mark Cook was an active participant in

the conspiracy with Jess Babinsack.  For all of the foregoing reasons, the Court finds and rules that Defendant, Mark Cook, is guilty as charged in the indictment of one count of conspiracy to commit offenses against the United States, that is, Making, Unttering and Possessing Counterfeit Securities of an Organization Involved in Interstate Commerce, in violation of 18 U.S.C. § 513(a) and Use of Unauthorized Access Devices, in violation of 18 U.S.C. § 1029(a)(2), by participating in the passing of counterfeit checks at various retail establishments from November 2006 to December  2006, in violation of Title 18, United States Code § 371.

       An appropriate Order follows.

                                                        McVerry, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | 02: 07cr12 |
| ) | |
| MARK COOK ) | |

**ORDER OF COURT**

AND NOW, this 24th day of September, 2007, after a non-jury trial conducted on September 17 and 18, 2007, and in accordance with the foregoing Memorandum Opinion, the Court finds the Defendant, Mark Cook, **GUILTY** as charged in the indictment of one count of conspiracy, in violation of Title 18, United States Code § 371.

It is further **ORDERED** that sentencing of Defendant is scheduled on **January 4, 2008, at 10:30 a.m.**

The United States Probation Office is hereby **ORDERED** to conduct a presentence investigation and prepare a Presentence Investigation Report in accordance with Local Criminal Rule 32.1.

BY THE COURT:

s/Terrence F. McVerry
United States District Court Judge

cc:   Brendan T. Conway, AUSA
      Email: brendan.conway@usdoj.gov

      Marvin A. Miller, Esquire
      Email: mmlaw4you@aol.com

      U.S. Probation Office
      U.S. Marshal